**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GWENDOLYN ROUNDTREE, Plaintiff | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, Defendant | : | NO. 07-711 |

**REPORT AND RECOMMENDATION**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE

December 21, 2007

Gwendolyn Roundtree ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"). Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply brief. For the reasons set forth below, it is recommended that Plaintiff's request for review be GRANTED in part and DENIED in part and the case be REMANDED to the Commissioner for further proceedings consistent with this Report and Recommendation.

## I. PROCEDURAL HISTORY[1]

On July 22, 2002, Plaintiff applied for SSI alleging disability, since April 13, 1995, as a result of migraine headaches. (R. 16). Benefits were denied, initially, whereupon, Plaintiff requested and was granted an administrative hearing. On March 17, 2003, Plaintiff appeared before Christine

[1] I have reviewed and considered the following documents in analyzing this case: Plaintiff's Brief in Support of her Request for Review ("Pl.'s Br."), Defendant's Response ("Def.'s Br.") thereto, Plaintiff's Reply Brief ("Rep. Br."), and the administrative record ("R."), including all exhibits thereto.

McCafferty, Administrative Law Judge ("ALJ"), for an administrative hearing; Plaintiff testified at the hearing. (R. 183-201). On May 23, 2003, the ALJ issued an unfavorable decision, finding Plaintiff had no severe impairments. (R. 51-55). The Appeals Council remanded the case to the ALJ on April 30, 2004. (R. 75-77). At a second administrative hearing on November 18, 2004, Plaintiff, her sister Gail Browne, and M. Premo, a vocational expert ("VE"), testified. (R. 204-55). On January 20, 2005, the ALJ issued another unfavorable decision, finding that Plaintiff could perform work existing in the national economy and, therefore, was not disabled at the fifth step of the sequential evaluation process.[2] (R. 16-26). On January 5, 2007, the Appeals Council denied Plaintiff's request for review, thus, the ALJ's decision became the final decision of the Commissioner. (R. 5-7). Plaintiff now seeks judicial review of that denial. This case was referred to the undersigned by the Honorable Ronald L. Buckwalter, under the authority of 28 U.S.C. § 636(b)(1)(B), for preparation of a Report and Recommendation.

---

[2]The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 416.920(g).

## II. FACTUAL BACKGROUND

A. Personal History

Plaintiff, born on November 6, 1952, was 52 years old at the time of the second administrative hearing. (R. 79, 204). She is divorced, (R. 186), and lives on the top floor of her mother's home. (R. 187). Plaintiff completed high school, (R. 187), and has no past relevant work. (R. 17, 25).

B. Plaintiff's Testimony

Plaintiff testified about her condition at both administrative hearings. (R. 184-201, 211-34). At the first hearing, she stated that she suffers migraine headaches once or twice a month, each headache lasts two to three days, and she spends an additional two days recovering from each migraine. (R. 188). During migraine headaches, she only sleeps and is unable even to eat, thus causing weakness and the need for two additional days to recover after the migraine ends. (R. 189, 192-93). At the time of the first hearing, Plaintiff was not taking any medication for her migraines, because it made her ill. (R. 196).

By the time of the second hearing, Plaintiff's severe headaches occurred three times each month. (R. 212). She was incapacitated for up to five days by each migraine and, during a severe migraine headache, she could not eat. (R. 212, 234). Plaintiff also reported that she suffered headache "flashes" three to four times each week; these were relieved by one to two hours of sleep. (R. 220). Plaintiff was prescribed and took different medication for her migraines. (R. 212-13). She first saw a neurologist for her headaches in February 2003. (R. 219). Plaintiff also sees a psychiatrist twice a month. (R. 217). This treater had not yet prescribed medication for her; he wanted to see her for a few more times first. *Id.*

On a typical day, Plaintiff watches approximately five hours of television and sleeps. (R. 221). She does little housework, is able to do her laundry and attend to her grooming, and has no hobbies. (R. 221, 222). Plaintiff believes that, if she did not restrict her activities, she would have more frequent migraines and would require hospitalization. (R. 223). She explained that, whenever she encounters stress or is forced to do something outside her home, a migraine occurs. (R. 229-30). Plaintiff even experienced tension and pressure in her head, which is often a precursor to a migraine, when filling out the disability forms for this case. (R. 225-26).

Plaintiff has no friends and engages in no social activities. (R. 231-32). She only sees her siblings, in-laws, and a nephew when they visit her. (R. 232-33). She only sees them if she is not having a migraine. (R. 232). Finally, Plaintiff calls her relatives only on special occasions such as birthdays or holidays. (R. 233).

C. Gail Browne's Testimony

Gail Browne, Plaintiff's sister, testified at the second administrative hearing. (R. 235-49). Ms. Browne either sees or speaks to Plaintiff four times per week in person or via telephone. (R. 235-36). She takes Plaintiff shopping; sometimes, Plaintiff does not know what to buy. (R. 238). Ms. Browne has seen Plaintiff suffer increased anxiety when out in public and Plaintiff is frequently unable to see her the day following an outing because of headaches. (R. 236). She believes Plaintiff has had this problem for twenty years although it has worsened over the years forcing Plaintiff to become more reclusive. (R. 238-39). At times, Plaintiff's headaches are too painful for her to go the doctor. (R. 247). Ms. Browne described how, during a migraine headache, Plaintiff looks haggard, stumbles, staggers, and reels around. (R. 248-49).

Ms. Browne described her sister as feeble and dependent upon others. (R. 239). She believes

Plaintiff also has a longstanding, untreated mental impairment. (R. 239, 248). Plaintiff is combative in that she talks about her suffering but denies having a problem and refuses to seek appropriate treatment. (R. 239-40).

D. Medical History

The earliest medical record submitted is a March 8, 1996 letter from Robert L. Sadoff, M.D., a psychiatrist who examined Plaintiff for ninety minutes on March 5, 1996. (R.152-57). Dr. Sadoff diagnosed Plaintiff with a Conversion Disorder[3] and possibly a Pain Disorder Associated with both Psychological Factors and a General Medical Condition.[4] (R. 157). He opined that Plaintiff was unaware of the connection between her headaches and her mental impairments. *Id.* He also opined that it was very unlikely Plaintiff was feigning her headaches. *Id.*

On August 11, 2004, Guillermo R. Otero-Perez,[5] M.D. and George S. Bell, M.D., two psychiatrists, completed a comprehensive biopsychosocial evaluation of Plaintiff. (R. 165-67). They concluded that Plaintiff suffers from Depression NOS,[6] Anxiety Disorder NOS,[7] ruled out a

---

[3]"The essential feature of Conversion Disorder is the presence of symptoms or deficits affecting voluntary motor or sensory function that suggests a neurological or other general medical condition . . . The symptoms are not intentionally produced or feigned, as in Factitious Disorder or Malingering. " *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* at 492 (2000) ("*DSM-IV-TR*")."

[4]"The essential feature of Pain Disorder is pain that is the predominant focus of the clinical presentation and is of sufficient severity to warrant clinical attention . . . The pain is not intentionally produced or feigned, as in Factitious Disorder or Malingering . . . [In Pain Disorder Associated with both Psychological Factors and a General Medical Condition], both psychological factors and a general medical condition are judged to have important roles in the onset, severity, exacerbation, or maintenance of the pain." *DSM-IV-TR* at 498, 499.

[5]The doctor does not hyphenate his surnames on page 167 of the administrative record but does on treatment notes at pages 158 and 159 of the administrative record.

[6]"The Depressive Disorder Not Otherwise Specified category includes disorders with depressive features that do not meet the criteria for Major Depressive Disorder, Dysthymic Disorder, Adjustment Disorder With Depressed Mood . . . , or Adjustment Disorder with Anxiety and Depressed Mood." *DSM-IV-TR* at 381.

[7]"Anxiety Disorder Not Otherwise Specified is included for coding disorders with prominent anxiety or phobic avoidance that do not meet criteria for any of the specific Anxiety Disorders defined in this section (or anxiety symptoms about which there is inadequate or contradictory information)." *DSM-IV-TR* at 430.

somatization[8] disorder,[9] and set Plaintiff's Global Assessment of Functioning[10] ("GAF") score at 60.[11] (R. 167).

A treatment note from Dr. Otero-Perez dated September 22, 2004 indicated that Plaintiff was frustrated by her inability to obtain disability benefits and she thought this meant people do not believe she has a physical problem. (R. 159). He noted that Plaintiff was cooperative, alert, oriented, and made good eye contact; he repeated the diagnosis of Depression NOS. *Id.* In an October 11, 2004 treatment note, Dr. Perez-Otero found Plaintiff to be anxious, cooperative, alert, oriented, and showing good judgment. (R. 158). Additionally, Plaintiff was more open about her feelings but still had marked difficulty discussing her mental problems. *Id.*

Plaintiff treated with Alan Weber, M.D. and Akram Shhadeh, M.D. of Temple University Neurology Associates. (R. 140-47). In 2003, Dr. Weber opined that Plaintiff seemed to lack any interest in treatment and questioned whether or not she simply wanted disability benefits.[12] (R. 145). A treatment note dated November 6, 2003 indicates that her headaches seemed to arise from situational stress. (R. 143).

Dr. Shhadeh prepared a medical source statement concerning Plaintiff's headaches on November 11, 2004. (R. 170-74). Plaintiff, a patient since February 2003, was diagnosed with chronic, daily headaches, of increasing severity two to three times per week; more severe headaches

[8]"In psychiatry, the conversion of mental experiences or states into bodily symptoms." *Dorland's Illustrated Medical Dictionary*, 1544 (28th ed. 1994) ("*Dorland's*").

[9]"The essential feature of Somatization Disorder is a pattern of recurring, multiple, clinically significant somatic complaints. A somatic complaint is considered to be significant if it results in medical treatment (e.g., the taking of medication) or causes significant impairment in social, occupational or other important areas of functioning." *DSM-IV-TR* at 486.

[10]Global Assessment of Functioning is "the clinician's judgment of the individual's overall level of functioning." *DSM-IV-TR* at 32.

[11]A GAF score of 60 corresponds to "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers of co-workers)." *DSM-IV-TR* at 34.

[12]The month and day of this treatment note, which starts on page 144 of the administrative record, was not reproduced.

lasted from one to three days. (R. 170, 171). Bright lights, movement, and noise worsened Plaintiff's headaches; lying in a dark room eased them. *Id.* One objective sign of Plaintiff's headaches was impaired sleep; her headaches were explained by migraine, anxiety, and tension. (R. 171, 172). He believed Plaintiff was not a malingerer; emotional factors contributed to her malady. (R. 172). Dr. Shhadeh believed that Plaintiff's impairments were reasonably consistent with her symptoms. *Id.* He noted that Plaintiff had some relief with Axert[13] and he expected some relief with Topamax.[14] *Id.* Dr. Shhadeh stated that, during a headache, Plaintiff would be unable to work and would need a break; he opined that Plaintiff would need two unscheduled breaks during the work day.[15] (R. 173). Dr. Shhadeh opined that Plaintiff was capable of low stress work and, most significantly, that she would miss more than three days of work per month.[16] *Id.*

On January 13, 2003, Dr. Pamela L. Hadley, Plaintiff's primary care physician, deemed her temporarily disabled from June 1, 2002 to June 1, 2003. (R. 132). On July 21, 2003, Dr. Hadley extended that disability until November 1, 2003, (R. 130); on October 10, 2003, she opined that Plaintiff was temporarily disabled from October 10, 2003 to April 1, 2004. (R. 151). Finally, on August 5, 2004, Dr. Shhadeh opined that Plaintiff was temporarily disabled from August 5, 2004 to August 5, 2005. (R. 149).

E. State Agency Assessment

Dr. John P. Kohler examined Plaintiff on October 3, 2005. (R. 122-26). He noted that: (1) Plaintiff's history indicated severe headaches; (2) the impairment caused by Plaintiff's headaches

---

[13] Axert is indicated for the acute treatment of migraine headaches. *Physicians' Desk Reference*, 2396 (61st ed. 2007) ("*PDR*").

[14] Topamax is indicated for the prophylaxis of migraine headaches. *PDR* at 2406.

[15] Dr. Shhadeh wrote that the length of these unscheduled breaks was unknown and could last up to a month. (R. 173).

[16] This is the most significant of Dr. Shhadeh's findings because, as the VE testified, this level of absenteeism would preclude all work. (R. 251).

was unclear because she reported that they only occurred twice per month; and (3) Plaintiff had withdrawn from almost all activities outside her home. (R. 126). Dr. Kohler also believed Plaintiff suffered from depression with some elements of obsessive compulsive disorder.[17] *Id.*

F. Vocational Testimony

At the second administrative hearing, the VE noted that Plaintiff had no past relevant work. (R. 249). The ALJ asked the VE to consider a hypothetical individual with the ability to perform medium[18] work involving only simple, repetitive tasks. *Id.* The VE responded that such a person could perform the jobs of: (1) cleaner (25,000 in the local economy, 1,600,000 in the national economy); (2) packager (1,900 in the local economy, 100,000 in the national economy); and (3) assembler (2,000 in the local economy, 156,000 in the national economy). (R. 250). If Plaintiff's testimony -- which the VE characterized as she "sleeps all day and watches TV" -- is believed, she could not work. *Id.* The VE further testified that, accepting Plaintiff's testimony as true, she suffers severe headaches two to three times per month and is incapacitated for four to five days per month, and, thus, would be unable to maintain gainful employment. (R. 251).

## III. THE ALJ's FINDINGS

After the second administrative hearing, the ALJ issued the following findings:

> 1. [Plaintiff] has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2. [Plaintiff's] headaches and depression and anxiety are considered severe impairments based on the requirements in the Regulations 20 C.F.R. 416.920(b).

[17] Obsessive compulsive disorder is "an anxiety disorder characterized by recurrent obsessions or compulsions, which are severe enough to interfere significantly with personal or social functioning. Performing compulsive rituals releases tension temporarily, and resisting them causes increased tension." *Dorland's* at 495.

[18] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

4. The undersigned finds [Plaintiff's] allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5. [Plaintiff] retains the residual functional capacity to perform the exertional demands of medium level work, or work which requires maximum lifting of fifty pounds and frequent lifting of twenty-five pounds, and standing, walking or sitting no more than six hours daily (20 C.F.R. § 416.967). She is limited to simple, repetitive tasks.

6. [Plaintiff] has no past relevant work (20 C.F.R. § 416.965).

7. [Plaintiff] is an individual closely approaching advanced age (20 C.F.R. § 416.963).

8. [Plaintiff] has a high school education (20 C.F.R. § 416.964).

9. [Plaintiff] has the residual functional capacity to perform a significant range of medium work (20 C.F.R. § 416.967).

10. Although [Plaintiff's] limitations do not allow her to perform the full range of medium work, using Medical-Vocational Rule 203.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.

11. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 416.920(g)).

(R. 25-26).

## IV. DISCUSSION

### A. Standard of Judicial Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Schaudeck v.*

*Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla of evidence but may be less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the Court should grant deference if the ALJ's findings of fact are supported by substantial evidence even when the Court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). On the other hand, the Commissioner's legal conclusions are subject to plenary review. *Schaudeck*, 181 F.3d at 431.

B. Burden of Proof in Disability Proceedings

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. § 416.905(a). Plaintiff may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (b) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423 (d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, Plaintiff must initially demonstrate that a medically determinable disability prevents her from returning to past employment. *See Brown v. Bowen*, 845

F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, and work experience. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C. Review of the Administrative Law Judge's Decision

The ALJ, applying the sequential evaluation process, determined that Plaintiff retained the functional capacity to perform the exertional demands of a limited range of medium work, which exists in the national economy; consequently, she was not disabled. (R. 24-26). Plaintiff argues that the ALJ: (1) erred in rejecting the opinions of her treating neurologist, Dr. Shhadeh; (2) failed to weigh properly her testimony concerning her impairments; and (3) erred by failing to evaluate her sister's credibility. Pl.'s Br. at 5-21. The Commissioner requests that the court affirm the ALJ's finding that Plaintiff was not disabled. Def.'s Br. at 2-9. The court will address Plaintiff's arguments out of turn, starting with the third.

1. ALJ Erred by Failing to Evaluate the Credibility of Plaintiff's Sister, Ms. Browne

Plaintiff argues that the ALJ erred by failing to evaluate the credibility of her sister, Ms. Browne, who corroborates her testimony concerning her headaches and explains why she delayed seeking mental health treatment. Pl.'s Br. at 20-21. The Commissioner concedes that it constituted error not to assess Ms. Browne's credibility, but maintains the error was harmless. Def.'s Br. at 7-8. Plaintiff denies that the error was harmless. Rep. Br. at 4-5.

As the Commissioner acknowledges, when a claimant presents non-medical witnesses to support her credibility concerning impairments, an ALJ has the duty explicitly to consider that testimony. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). The

Commissioner asserts that the ALJ's omission was harmless because: (1) it is obvious that the ALJ discounted Ms. Browne's credibility for the same reasons she discredited Plaintiff; and (2) unlike *Burnett*, in this case the ALJ did not commit multiple errors and articulated the reasons for her conclusions. Def.'s Br. at 8. The Commissioner's assertions are flawed.

First, it is impermissible for the court to supply its own reasons to support an ALJ's decision; the court must limit its analysis to the explanations an ALJ actually provides for her decision. *See Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001). Thus, the court may not consider the Commissioner's first assertion, which the ALJ did not advance it in her decision. Second, there is no indication in *Burnett* that, if the ALJ had only erred in failing to assess the testimony of the claimant's lay witnesses or if he had better articulated the general reasons for his decision, the court would have found the error harmless. Further, as explained below, this was not the only error the ALJ made in her decision. *See infra* Section IV(C)(2)-(C)(3). Thus, the court finds the ALJ's error not harmless; on remand, the ALJ shall explicitly evaluate Ms. Browne's credibility.

2. <u>The ALJ Erred in Evaluating Plaintiff's Credibility</u>

Plaintiff argues that the ALJ erred when evaluating her credibility concerning the frequency and duration of her migraine headaches. Pl.'s Br. at 15-20; Rep. Br. at 4. The Commissioner maintains that the ALJ properly found Plaintiff was not credible. Def.'s Br. at 4-7.

The ALJ erred by failing to evaluate the credibility of Ms. Browne, Plaintiff's sister. *See infra* Section IV(D)(1). This error also impacts the ALJ's evaluation of Plaintiff's credibility, inasmuch as Ms. Browne's testimony tended to bolster Plaintiff's credibility. On remand, the ALJ must reconsider her evaluation of Plaintiff's credibility after assessing Ms. Browne's credibility. However, Plaintiff advances additional and distinct credibility errors.

Plaintiff first complains that the ALJ erred by failing to credit her testimony based on the ALJ's personal belief about how someone truly suffering the pain Plaintiff alleges would react to that pain and, more importantly, seek to alleviate it. Pl.'s Br. at 15-17. Plaintiff supports her argument by citing to parts of the second administrative hearing where the ALJ made such remarks. *Id.* (citing R. 240-41, 242). The ALJ's decision also reflects this reasoning when she wrote:

> The Administrative Law Judge would think that an individual suffering the debilitating headaches as alleged by [Plaintiff] would seek significant medical treatment for this pain, but the record shows no more than intermittent treatment, occurring only after [Plaintiff] filed her current claim of Supplemental Security Income.

(R. 21). Likewise, the ALJ explained her failure to fully credit Plaintiff as follows:

> Although [Plaintiff] has asserted that she exhibits significant impairments, the totality of the evidence fails to support the existence of any significant pathology capable of producing such severe and debilitating pain as alleged by [Plaintiff]. It does not seem reasonable that [Plaintiff] suffers the symptoms that she complains of, but still declines to become actively involved in treatment. Furthermore, the treatment record shows that [Plaintiff] is more interested in obtaining disability benefits that in obtaining treatment.

(R. 22).

The ALJ properly considered the extent of treatment sought by Plaintiff and her apparent motivation for seeking treatment. First, the Commissioner's regulations explicitly permit consideration of the treatment a claimant undergoes for her condition when evaluating the claimant's credibility. 20 C.F.R. § 416.929(c)(3)(v). Second, the record supports the conclusion that Plaintiff treated with Dr. Shhadeh's practice only a few times and only commenced treatment after applying for disability benefits. Third, it is permissible for an ALJ to consider a claimant's motivation in seeking treatment. *Cf. Frazier v. Apfel*, Civ. A. No. 99-715, 2000 WL 288246, *9 (E.D. Pa. Mar.

7, 2000) (noting that it was permissible for the ALJ to consider, when evaluating the claimant's credibility, that the claimant had a motive to overstate the extent of her impairments in order to obtain disability benefits). Fourth, in 2003, Dr. Weber opined that Plaintiff might not be interested in seeking treatment, but rather, disability benefits. (R. 145). Based on these factors, the ALJ did not err when considering the frequency of Plaintiff's treatment and her possible motivation for seeking treatment[19] when evaluating her credibility concerning the frequency and duration of her headaches.

Plaintiff complains that the ALJ failed to consider the extent to which her mental impairment prevented her from obtaining treatment for her headaches. Pl.'s Br. at 17-19. She notes that Dr. Sadoff's 1996 report indicated that she was unaware of the connection between her headaches and her mental impairment. *Id.* at 18. Plaintiff also maintains that Dr. Otero-Perez, like Dr. Sadoff, has opined that there is a connection between her headaches and her mental impairment. *Id.*

The court does not agree that Dr. Otero-Perez opined to a connection between Plaintiff's headaches and her mental impairment. Contrariwise, he ruled out a somatization disorder, (R. 167), implying that he found no connection between Plaintiff's headaches and her mental impairment.

On the other hand, Dr. Sadoff did opine that: (a) Plaintiff was unaware of the connection between her headaches and her mental impairment, and (b) it was very unlikely Plaintiff was feigning her headaches. (R. 157). These opinions are important because they tend to make Plaintiff's testimony concerning her headaches credible. Since these opinions support a conclusion contrary to the one reached by the ALJ, she had a duty to provide some reason for rejecting them.

[19]Although the court does not conclude that Plaintiff only sought treatment with a neurologist in order to support her disability claim, her failure to seek treatment before seeking benefits permits the reasonable inference that she was motivated, at least in part, to seek treatment in order to bolster her claim. A reasonable person could so infer, as did Dr. Weber, even though the inference may not actually be true.

*See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). However, the ALJ, erroneously, ignored these opinions and failed to provide any reason for rejecting them. *See id.* On remand, the ALJ shall explicitly consider Dr. Sadoff's opinion concerning the connection between Plaintiff's headaches and her mental impairments, his opinion that she is not feigning her headaches, and, if she will reject Dr. Sadoff's opinions, she must explain why.

Plaintiff takes issue with the ALJ's reliance on her activities of daily living as a basis to discredit her. Pl.'s Br. at 20. However, the Commissioner's regulations explicitly permitted the ALJ to consider Plaintiff's daily activities when deciding whether to credit her testimony concerning her symptoms. 20 C.F.R. § 416.929(c)(3)(i). Since Plaintiff does not argue that the ALJ mis-stated, *i.e.* overstated, her activities of daily living, there is no basis to find that the ALJ erred.[20]

3. Substantial Evidence Supports the ALJ's Rejection of Dr. Shhadeh's Most Significant Opinion

Plaintiff maintains that the ALJ erred in rejecting Dr. Shhadeh's opinions concerning her headaches. Pl.'s Br. at 5-14; Rep. Br. at 1-4. The Commissioner responds that the ALJ properly found Dr. Shhadeh's opinions not entitled to controlling weight, because they were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence of record. Def.'s Br. at 2-4.

Plaintiff relies upon Dr. Shhadeh's November 11, 2004 opinions that: (1) she suffers from chronic, daily headaches; (2) these headaches necessitate unscheduled breaks from work; (3) she

[20]Plaintiff asserts that SSR 96-9p and *Frankenfield v. Bowen*, 861 F.2d 405 (3d Cir. 1988) establish that an ALJ may not infer an individual can work on an ongoing and continuing basis simply because the individual can perform sporadic or transitory activities on days where the individual's symptoms are waning. Pl.'s Br. at 20. The court has been unable to find support for this assertion in SSR 96-9p, which concerns how to evaluate individuals with an RFC for less than the full range of sedentary work. Plaintiff's citation to *Frankenfield* is problematic for several reasons: (1) it lacks a point cite; (2) *Frankenfield* was decided before § 416.929 was promulgated in 1991; and, most significantly, (3) the ALJ did not use Plaintiff's activities of daily living to decide she could work on an ongoing and continual basis but, instead, to evaluate the antecedent question of her credibility concerning her headaches.

suffers migraine headaches of increased severity two to three times per week; they for one to three days; and (4) as a result of her severe headaches, she would miss more than three days of work each month. Pl.'s Br. at 6-7. The last opinion is the most significant, because the VE testified that this level of absenteeism would preclude any employment. (R. 251).

For a treating physician's medical opinion to be afforded controlling weight it must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not be inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2). The Commissioner has explained that "well-supported" does not mean fully supported. *See* Social Security Ruling 96-2p ("SSR 96-2p"), 1996 WL 374188, *2. Likewise, "not inconsistent" means that a well-supported opinion can be controlling even when it is not supported by all of the other evidence in the record. *Id.* at *3. Yet, the opinion will not be afforded controlling weight if there is substantial evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") that contradicts or conflicts with the opinion. *Id.* Further, when a treating physician's medical opinion cannot be afforded controlling weight, it need not be rejected and must still be weighed using the factors provided in 20 C.F.R. § 416.927. *See* SSR 96-2p, 1996 WL 374188, *4.

The ALJ rejected Dr. Shhadeh's opinions because: (1) she regarded the opinions as concerning Plaintiff's residual functional capacity ("RFC") and, as such, they were not medical opinions entitled to any deference; and (2) she believed the opinions were not supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence in the record. (R. 22-23). The ALJ's first explanation lacks merit, yet, her decision to reject Dr. Shhadeh's opinion that Plaintiff would miss work more than three days per

month is supported by substantial evidence.

The ALJ is correct that, if Dr. Shhadeh expressed an opinion concerning Plaintiff's RFC, that opinion would not be considered a medical opinion entitled to any special weight. *See* 20 C.F.R. § 416.927(e)(2), (e)(3). However, Dr. Shhadeh did not assess Plaintiff's RFC, or her maximum ability to meet the physical, mental, sensory and other requirements of work. *See* 20 C.F.R. § 416.945(a)(1), (a)(4). Except for one instance noted in the margin that the parties do not rely upon, Dr. Shhadeh's November 2004 opinions do not reach these ultimate questions; instead, they primarily address the antecedent questions of the frequency and duration of Plaintiff's headaches and expected days of incapacitation as a result of her headaches.[21] Since his relevant opinions do not address Plaintiff's RFC, the ALJ's first explanation improperly rejects those opinions.

The ALJ gave five reasons for rejecting Dr. Shhadeh's opinions as not supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with other substantial evidence in the record: (1) he reported that Plaintiff suffers daily headaches, whereas Plaintiff said she had three a month; (2) he bases Plaintiff's limitations solely on her complaints and the ALJ has found her complaints only partially credible; (3) he reports that Plaintiff's medications provide some relief; (4) it appears he did not read the assessment form carefully because he wrote Plaintiff would need two unscheduled breaks each workday, each lasting perhaps a month; and (5) his conclusion that Plaintiff would miss more than three workdays per month is not supported by her intermittent neurological treatment. (R. 22-23). The third and fifth explanations provide substantial and sufficient evidence to support the ALJ's rejection of Dr. Shhadeh's crucial opinion that Plaintiff

[21]The Commissioner's regulations identify basic work abilities as the ability to: sit, stand, walk, lift, carry, push, pull, reach , handle, stoop, or crouch; understand, remember, or carry out instructions; or respond appropriately to supervisors, co-workers or work stresses. *See* 20 C.F.R. § 416.945(b), (c). Dr. Shhadeh stated that Plaintiff was capable of performing low stress jobs. (R. 173). He was asked about Plaintiff's limitations concerning some additional, basic work abilities, (R. 174), but responded "unknown." *Id.*

would necessarily miss more than three days of work per month because of her headaches.

Whether or not the ALJ's first explanation is supported by substantial evidence is a close question. Plaintiff testified that severe migraine headaches cause her to be incapacitated for up to five days at a time, approximately three times per month. (R 212, 234). In addition, she testified that "flashes" of headaches cause her to sleep for only an hour or two at a time, three or four times per week. (R. 220). Thus, Plaintiff did testify that she has more than three headaches a month but she did not specifically testify that she has daily headaches. In the court's view, a reasonable mind would be puzzled by this discrepancy between Plaintiff's testimony and Dr. Shhadeh's opinion but would not necessarily conclude, as the ALJ did, that Dr. Shhadeh's opinion ought to be rejected. Were this the only explanation the ALJ gave, the court would remand for her to acknowledge Plaintiff's testimony concerning the frequency of her headache "flashes" and determine whether, in light of that testimony, Dr. Shhadeh ought to be credited more fully. However, since the ALJ's decision to reject Dr. Shhadeh's most significant opinion can be sustained on other grounds, the court will not recommend a remand for this limited clarification.

The question of Plaintiff's credibility is addressed in Section IV(D)(3) *infra*. In light of the court's conclusion that the ALJ's decision to reject Dr. Shhadeh's most significant opinion can be supported by her third and fifth explanations, remand for the ALJ to evaluate correctly Plaintiff's credibility and reconsider the extent to which Plaintiff's credibility bears upon Dr. Shhadeh's most significant opinion is unwarranted.[22]

The ALJ notes that Dr. Shhadeh found Plaintiff's medications provide some relief. This is

[22]Indeed, if the ALJ on remand concludes that Plaintiff's testimony concerning the extent and duration of her migraine headaches should be credited, the record establishes Plaintiff is disabled, because the VE testified that her monthly incapacity due to severe migraine headaches precludes all work. In that event, it would be irrelevant whether the ALJ properly rejects Dr. Shhadeh's opinion.

supported by a treatment note from February 12, 2004, (R. 141), which the ALJ cited in her decision. (R. 21). The record, thus, supports a conclusion that Plaintiff's headache pattern improves on Topamax and that Axert provides Plaintiff fair relief from her headaches.[23] Thus, the ALJ's reliance on this treatment note is not erroneous.[24]

The ALJ further relied on Dr. Shhadeh's confusing and incomprehensible response that Plaintiff might require two unscheduled breaks from work, perhaps lasting up to one month. The ALJ could reject this response, but it would not taint Dr. Shhadeh's other responses, particularly his opinion that Plaintiff could be expected to miss more than three days of work per month, which the ALJ rejected on the ground that it was inconsistent with the intermittent treatment he afforded her. The Commissioner's regulations explicitly permit an ALJ to consider, as the ALJ did herein, the number of times a treating source sees a claimant when determining the weight to be afforded the treating source's medical opinions. *See* 20 C.F.R. § 416.927(d)(2)(i). On this ground and on the unrebutted fact that Plaintiff's medication improves her condition, the court finds that substantial evidence supports the ALJ's decision to accord Dr. Shhadeh's disabling opinion little weight.[25]

## V. CONCLUSION

After a thorough review of the record, this court finds that several aspects of the Commissioner's final decision are not supported by substantial evidence or reveal legal error, hence, the case should be remanded. Accordingly, I make the following:

---

[23]In his November 11, 2004 medical source statement, Dr. Shhadeh also noted that Plaintiff felt some relief with Axert and that he expected some relief with Topamax. (R. 172).

[24]Plaintiff fails to address this explanation in her opening brief or reply brief.

[25]The court notes that substantial evidence is not a great deal of evidence, simply more than a scintilla. *See Brown v. Bowen*, 845 F.2d at 1213.

## RECOMMENDATION

AND NOW, this 21st day of December, 2007, I respectfully recommend that:

1. The Report and Recommendation be APPROVED and ADOPTED;

2. The Plaintiff's Request for Review be GRANTED in part and DENIED in part; and

3. The case be REMANDED to the Commissioner of the Social Security Administration so that the Administrative Law Judge ("ALJ") can conduct additional proceedings consistent with the Report and Recommendation. Specifically, upon remand, the ALJ should: (a) explicitly consider Gail Browne's testimony concerning the debilitating effects of Plaintiff's migraine headaches and explain the weight and credibility accorded this witness; (b) explicitly consider Dr. Robert L. Sadoff's March 8, 1996 opinions concerning Plaintiff's headaches; and (c) thereafter, re-evaluate the credibility of Plaintiff's testimony concerning her migraine headaches in light of (a) and (b).

It be so ORDERED.

*/s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
United States Magistrate Judge